**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JAY MOREL,<br><br>Plaintiff,<br><br>v.<br><br>INFINITE COMPUTER SOLUTIONS, INC. et al,<br><br>Defendants. | No. 26-cv-01723-WJM-MAH<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendant Kyndryl, Inc.'s ("Kyndryl") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8 ("Motion"). The Motion is fully briefed, and the Court declines to hold oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Motion is **GRANTED**.

## I.    BACKGROUND

Defendant Infinite Computer Solutions, Inc. ("ICS") "assigned Plaintiff to work at Kyndryl." ECF No. 1, Ex. A ("Complaint"), at ¶ 3. ICS had a contract with Kyndryl providing for Plaintiff to work at Kyndryl's offices. *Id.* ¶ 8. Plaintiff began working as a technical leader in October 2023 and routinely worked remotely. *Id.* ¶¶ 10-11.

Unfortunately, Plaintiff suffers from Hidradenitis Suppurativa, a condition that causes him pain and limits his ability for him to fully exercise his bodily functions. *Id.* ¶¶ 13-15. Although Plaintiff requested time off and an amendment to his work schedule, his team lead denied his request. *Id.* ¶ 18-20. Then, in December 2024, Plaintiff suffered a tear of his Anterior Cruciate Ligament ("ACL"), which further inhibited his ability to function in the workplace. *Id.* ¶¶ 25-28. The Complaint alleges that Defendants once again failed to accommodate him before declining to renew his employment contract. *Id.* ¶ 31-32.

Plaintiff filed suit in state court bringing eight live claims[1] under New Jersey law for disability discrimination in employment (Counts 1-3), retaliation (Count 4), public accommodation disability discrimination (Counts 5-6), and disability discrimination under contract (Counts 7-8), and Defendants timely removed. ECF No. 1. ICS answered, ECF No. 7, and Kyndryl filed this Motion.

---

[1] Plaintiff voluntarily dismissed without prejudice Count 9, a request for equitable relief, upon removal to federal court. ECF No. 10 ("Opposition"), at 3.

1

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although courts "may not consider matters extraneous to the pleadings," courts can consider a "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "may disregard any legal conclusions." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

## III.    DISCUSSION

As explained below, because the Court cannot accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," the Complaint is dismissed as to Kyndryl. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

### A.    Employer-Based Claims (Counts 1-3)

Plaintiff's first set of claims involve discrimination based on an employment relationship between himself and Kyndryl. Compl. ¶¶ 40-45. The New Jersey Law Against Discrimination (LAD) prohibits employers from discrimination based on, *inter alia*, disability. N.J. Rev. Stat. 10:5-12(a) (2025). The statute "should be liberally construed to advance its purposes," which include "protect[ing] the civil rights of individual aggrieved employees as well as the public's strong interest in a discrimination-free workplace." *Rios v. Meda Pharma., Inc.*, 252 A.3d 982, 986-87 (N.J. 2021) (citation modified). The statute only protects employees, not independent contractors. *Pukowsky v. Caruso*, 711 A.2d 398, 403 (N.J. Super. Ct. App. Div. 1998); *Sanger v. Next Level Bus. Servs., Inc.*, No. A-0592-24, 2026 WL 835420, at *10 (N.J. Super. Ct. App. Div. Mar. 26, 2026) ("It is axiomatic that our LAD and its broad protections apply solely to employees, not independent contractors.").

Courts in New Jersey routinely apply a twelve-factor test to determine whether an employment relationship exists, consisting of the following:

(1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

2

*Pukowsky*, 711 A.2d at 404; *see also D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 121 (N.J. 2007) (endorsing the *Pukowsky* test for employees' LAD claims). The first factor, the employer's right to control the worker's performance, is the "most important." *Chrisanthis v. Cnty. of Atl.*, 825 A.2d 1192, 1196 (N.J. Super. Ct. App. Div. 2003).

Applying these factors, the Court concludes that the Complaint does not plausibly allege an employer-employee relationship between Kyndryl and Mr. Morel. The Complaint lacks any non-conclusory allegations that Kyndryl, rather than ICS, managed Plaintiff's performance, compensation, benefits, and taxes. Although Kyndryl operates the physical office where Plaintiff worked, ICS was the entity that "assigned Plaintiff to work at Kyndryl's offices, Compl. ¶¶ 3-4, and the Complaint says nothing about which entity controlled the means and manner of Plaintiff's performance. The Complaint only alleges a contract between ICS and Kyndryl regarding Plaintiff's assignment, not between Plaintiff and Kyndryl directly, belying any inference that the parties intended to establish an employer-employee relationship. *Id.* ¶ 8. Although the Complaint refers to several supervisors, the Complaint fails to identify who employs those supervisors, and it similarly fails to state which defendant told Plaintiff that he needed to work in person notwithstanding his disabilities, as well as which defendant ultimately declined to renew his employment contract. The Complaint also lacks any factual allegations regarding the necessary skill for Plaintiff's job, the importance of Plaintiff's role in the business, and the nature of supervision in Plaintiff's field.

While one certainly "may be an employee of more than one entity," *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 134 (D.N.J. 2000), Plaintiff must plead facts, not conclusions, supporting this assertion. *See Malia v. Amazon.com, Inc.*, No. 17-cv-05155 (WJM), 2017 WL 6619227, at *2-3 (D.N.J. Dec. 28, 2017) (finding a lack of an employer-employee relationship where the amended complaint included more specific facts than the instant Complaint). The Court need not credit Plaintiff's conclusory assertions that ICS and Kyndryl acted together as a joint employer without any supporting factual allegations. *See Carroll v. Sunrise Detox Cherry Hill, LLC*, No. 19-cv-17287, 2020 WL 4218409, at *4 (D.N.J. July 22, 2020) (dismissing a conclusory theory of a joint employer relationship). And the Complaint impermissibly lumps Kyndryl and ICS into a collective entity, making it impossible to determine whether a joint employment relationship exists. *See Green v. 712 Broadway, LLC*, No. 17-cv-00991, 2018 WL 2754075, at *3-5 (D.N.J. June 8, 2018) (dismissing a complaint that fails to clarify the nature of the plaintiff's employment relationship and cautioning against group pleading).

Because the Complaint lacks sufficient factual allegations for the Court to determine whether "there has been a functional integration of the employer's business with that of the person doing the work," *D'Annunzio*, 927 A.2d at 120, Counts 1-3 are **dismissed**.

### B.    Retaliation Claim (Count 4)

Next, the Court turns to Plaintiff's claim of retaliation in employment. Compl. ¶¶ 46-47. A retaliation claim requires both an adverse employment decision and a nexus between the adverse action and the protected activity. *Battaglia v. United Parcel Serv., Inc.*, 70

3

A.3d 602, 619 (N.J. 2013). Here, the Complaint lacks factual allegations that *Kyndryl*, or any of its employees, took any adverse action. *See* Compl. ¶ 20. As explained above, the Complaint does not contain factual allegations supporting its assertion that Kyndryl was responsible for terminating Mr. Morel, rather than ICS. The Complaint also lacks a non-conclusory nexus between the denial of Plaintiff's request for accommodations and Kyndryl's alleged non-renewal of his employment contract. *See Paredes v. United Airlines, Inc.*, No. 21-cv-17091, 2023 WL 1779551, at *5 (D.N.J. Feb. 6, 2023) (holding that "the conclusory and general mention" of a discrimination charge was insufficient to plead a causal connection). Therefore, Plaintiff's retaliation claim is **dismissed**.

### C.   Public Accommodation Claims (Counts 5 & 6)

In addition, Plaintiff brings two claims against Kyndryl based on his assertion that Kyndryl is a place of public accommodation. Compl. ¶¶ 48-51. The LAD defines places of public accommodation by referring to a lengthy list, including, for example, stores, restaurants, auditoriums, hospitals, libraries, and educational institutions. N.J. Rev. Stat. § 10:5-5(l). The statute expressly excludes "any institution, bona fide club, or place of accommodation, which is in its nature distinctly private." *Id.* The definition of "places of public accommodation [is] not limited to those listed in the statute" and encompasses those "that are similar in nature to the ones included in the list." *Ptaszynski v. Uwaneme*, 853 A.2d 288, 295-96 (N.J. Super. Ct. App. Div. 2004) (holding that "any State governmental agency is a place of public accommodation"). Accordingly, the definition is "quite broad[]." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1458 n.2 (3d Cir. 1994).

In *Dale v. Boy Scouts of America*, the New Jersey Supreme Court articulated a test for places of public accommodation: "whether the entity before us engages in broad public solicitation, whether it maintains close relationships with the government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations." 734 A.2d 1196, 1210 (N.J. 1999), *rev'd and remanded on other grounds,* 530 U.S. 640 (2000). Applying this definition, courts have found that private facilities closed to the public are not places of public accommodation. *Compare Liebeskind v. Colgate-Palmolive Co.*, No. A-5054-07T1, 2010 WL 2557765, at *2 (N.J. Super. Ct. App. Div. June 11, 2010) (per curiam) (concluding that a "private, highly secure facility to which the public is not invited" was not a place of public accommodation), *with Miller v. Coca Cola Bottling Co.*, No. 12-cv-00862, 2013 WL 3288085, at *7 (D.N.J. June 28, 2013) (finding that facilities operated by Coca-Cola were not places of public accommodation).

Based on these cases, and acknowledging that New Jersey's public accommodation definition is broad, the Court nonetheless concludes that Kyndryl's private office is not a place of public accommodation. The Complaint lacks non-conclusory allegations supporting Plaintiff's assertion that Kyndryl has close relationships with the government or engages in broad public solicitation. *See Dale*, 734 A.2d at 1210. By contrast, under Plaintiff's theory, any private entity that solicits the public to purchase any good or service would be a place of public accommodation wherever it has offices. *See* Opp'n 18-19. The

4

legislature would not have drafted a statute with a long list of examples if it intended such a broad definition. *See Sanchez v. Fitness Factory Edgewater, LLC*, 231 A.3d 606, 611 (N.J. 2020) (recognizing that the New Jersey Supreme Court "strive[s] for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void, or insignificant" (citation modified)). Plaintiff's public accommodation claims are therefore **dismissed**.

### D.    Contract-Based Claims (Counts 7 & 8)

Finally, Plaintiff raises two claims of discrimination based on the performance of a contract. Compl. ¶¶ 52-55. The relevant statute, N.J. Rev. Stat. § 10:5-12(l), "prohibits refusal to contract" or "refusal to continue to contract," meaning that at a minimum, Plaintiff must plead a direct contractual relationship with Kyndryl, or that Kyndryl refused to contract with Plaintiff for discriminatory reasons. *Rowan v. Hartford Plaza Ltd.*, No. A-0107-11T3, 2013 WL 1350095, at *10 (N.J. Super. Ct. App. Div. Apr. 5, 2013). As discussed above, the Complaint lacks non-conclusory allegations that Plaintiff had a contract with Kyndryl—only that ICS "assigned" Plaintiff to work at Kyndryl pursuant to a contract between ICS and Kyndryl. Compl. ¶¶ 3, 8. Unlike here, in the main case Plaintiff cites, there was a contract between the plaintiff and the defendant. *See Rubin v. Chilton*, 819 A.2d 22, 25 (N.J. Super. Ct. App. Div. 2003) (analyzing the termination of a contract); Opp'n 21. Accordingly, Plaintiff's contract-based claims are **dismissed**.

### E.    Leave to Amend

Plaintiff seeks leave to amend if any claims are dismissed. *Id.* 22. Under Rule 15, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff is now "on notice as to the deficiencies in his complaint" and should have an opportunity to cure them. *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002). Consequently, the Court **grants** Plaintiff leave to amend.

## IV.    CONCLUSION

For these reasons, the Motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Kyndryl. Plaintiff's alternative request for leave to amend is **GRANTED**. Plaintiff may file an amended complaint within twenty-one (21) days that cures the deficiencies articulated herein. An appropriate order follows.

**DATE:**  5/21/2026

_____
WILLIAM J. MARTINI, U.S.D.J.